Strafford,
March 2, 1943. } No. 3401.

SADIE LEMIRE *v.* JOHN HALEY, *Adm'r.*

*Hughes & Burns* and *Walter A. Calderwood* (*Mr. Calderwood* orally), for the plaintiff.

*Cooper, Hall & Grimes* (*Mr. Grimes* orally), for the defendant.

MARBLE, J. It cannot be said that the Presiding Justice, acting in accordance with the law of the trial, was not warranted in setting the verdict aside as excessive. See *Golej* v. *Varjabedian*, 86 N. H. 244, 246, 247. The plaintiff's exception to the order of the court is accordingly overruled It therefore becomes necessary, for the guidance of the Superior Court in the conduct of the next trial, to consider the final item of the plaintiff's bill of exceptions. In that item the plaintiff "reserves and relies upon any and all" exceptions taken by her prior to and during the trial.

Subject to the plaintiff's exception, the Presiding Justice ruled at the beginning of the trial that she would "not be allowed to show" the oral contract. The New Hampshire decisions on this subject (*Ham* v. *Goodrich*, 37 N. H. 185, 190; *Emery* v. *Smith*, 46 N. H. 151, 155, 156; *Weeks* v. *Lund*, 69 N. H. 78, 84) are believed to conform to the views of Professor Woodward as stated in the following paragraph, which will be found on pages 166 and 167 of his work on Quasi Contracts:

"While the unenforceable contract does not afford the true criterion for determining the value of services rendered or property transferred, it ordinarily does show the amount of money the plaintiff once declared himself willing to take and which the defendant once agreed to pay. It should therefore be admitted, at the instance of either party, in the character not of a contract but of an admission against interest, for the purpose of establishing the value of such services or property. It has been contended in some cases that to permit the introduction of the terms of the contract for the purpose of assisting the plaintiff in any way is to defeat or circumvent the statute. This attitude, if consistently assumed, would prevent the proof of the contract even for the purpose of showing that the services rendered by the plaintiff were not intended to be gratuitous. It is clearly untenable. Reasonably interpreted, the statute applies only to the enforcement of oral *contracts*. It does not relate to oral admissions against interest. If, then, the same transaction happens to amount to both an oral contract and an oral admission, the unenforceability or invalidity of the contract should not affect the competency of the admission as evidence of a non-contractual obligation."

Like views are entertained by Professor Williston. 1 Williston, Con., s. 536, p. 1038; 2 Williston & Thompson, Con., s. 536, p. 1557. But both of these eminent authorities include the case of *Emery* v. *Smith*, 46 N. H. 151, in the list of those cases which refuse altogether to admit the agreed price in evidence. 1 Williston, Con., s. 536, p. 1038, note 2; Woodward, Quasi Con. 167, note 1. Such inclusion was doubtless due to an inaccurate headnote. As we understand the decision, it merely holds that in *quantum meruit* the unenforceable oral contract does not definitely "fix" the amount of the damages recoverable.

In the course of the opinion it is said: "In *Ham* v. *Goodrich* . . . it was held that an agreement to convey land in consideration of services to be rendered is within the statute, and that in a *quantum meruit* for such services the value of the land did not fix the measure of damages, although it might be considered by the jury on that question with other circumstances; that it would be an evasion of the statute to hold the damages to be fixed, for it would be giving full effect to the agreement.

"In the case before us there was oral evidence of an agreement to serve the defendant two years, the wages to be $100 for the first year and $200 for the second. . . . It will be observed that the only evidence that the wages were understood to be $200 was the oral contract itself, and if that is to fix the amount the statute is evaded practically. . . .

"On this point we think that the doctrine of *Ham* v. *Goodrich* is decisive, and that the verdict here cannot be sustained without overruling that case."

In the later case of *Weeks* v. *Lund*, 69 N. H. 78, 84, both *Ham* v. *Goodrich* and *Emery* v. *Smith* are cited to the proposition that the value of what the defendant agreed to give in payment of services may be weighed with other evidence as tending to show what the services were reasonably worth.

It is our conclusion, however, that evidence of the oral contract in the present case was properly excluded and that the rule hitherto in force in this jurisdiction requires modification.

The decedent's statement that if the plaintiff would stay with him for a while and be near him when needed, she would never be sorry, for some day everything he had would be hers, cannot fairly be said to constitute an admission that the services she might render were worth his entire estate. The demands which he might make upon her were highly problematical, and it is at least as probable as not

that he regarded the leaving to her of everything he had as more than recompense in the strict sense of the term. "Where it appears that at the time the contract was made the extent of the services to be rendered was speculative—as, for example, where one was to serve another until the latter's death—this ruling [that the value of the property promised may not be shown] is unquestionably sound. In such circumstances the promise of the defendant involves no admission of the value of the plaintiff's services." Woodward, Quasi Con., 168, 169.

The amount of the decedent's estate at the time of his death was admitted in evidence subject to the defendant's exception, and the Presiding Justice instructed the jurors, also subject to exception, that they might take into consideration the amount of the estate as bearing upon the ability of the decedent to pay for the services rendered and also as bearing upon the expectation on the part of the decedent to pay a fair and reasonable amount for such services.

While the fact that the decedent had substantial means would tend to establish his ability and expectation to pay for the attention he received (*Blake* v. *Lord*, 90 N. H. 42, 45), it does not follow that such attention was more valuable merely because he possessed sufficient resources to pay liberally for it.

It could be found from the fact that the plaintiff was in the position of a foster daughter that her services were especially valuable. *Muir* v. *Bartlett*, 78 N. H. 313, 314. The Presiding Justice so ruled. But the value of those services in no way depended on the fact that the decedent left an estate which was appraised at more than twenty-two thousand dollars.

In our opinion the plaintiff is entitled to recover merely the reasonable worth of her services without reference to the contract or the value of the decedent's property at the time of his death. See *Lisk* v. *Sherman*, 25 Barb. (N. Y.) 433, 439, 440.

*New trial.*

All concurred.